Charles F. Claiborne,
 Judge. **8165**

LAFAYETTE THEATRE COMPANY

 VS No. 8165

JUNIUS HART PIANO HOUSE LTD. & al,
 Appellant.

January 2d, 1922.

*Judge Dinkelspiel having been of counsel takes no part —*

Court of Appeal
PARISH OF ORLEANS
FILED JAN 2/22
H J Stansbury

**8165**

LAFAYETTE THEATRE CO.

VS No. 8165

JUNIUS HART PIANO HOUSE, LTD. & al.,
 Appellant.

CHARLES F. CLAIBORNE, JUDGE.

This is a damage suit for failure to return an organ in the same good condition in which it was delivered.

The plaintiff alleged that some years prior it purchased from the Junius Hart Piano Co., one of the defendants herein, a pipe organ and installed it in the Lafayette Theatre; that in February 1913 it delivered said organ to the defendant for the purpose of selling the same, and that defendant stored the same in its Canal Street store for the purpose of effecting said sale; that failing to sell the same the defendant, in May 1914, delivered said organ to the other defendant, William Gallagher, who stored it in his warehouse; that in June 1916 petitioner received said organ from Gallagher; that shortly after receiving said organ petitioner had the same

"examined and found that the said organ had been badly damaged, that many small parts were missing and would have to be replaced; that the lead tubing would have to be replaced, as every tube was broken and beyond repair, that the "metal speaking tubes" had become unsoldered and a number of the said tubes or pipes would have to be replaced, that the wooden speaking tubes were damaged and needed repair, that the bellows leather had become unglued and pulled apart and that to properly repair and restore the organ to the condition in which it was when the said Junius Hart Piano House Ltd. had received it, it would require an expenditure amounting to the sum of $400.00";

that said organ was in good condition when it was delivered to the Junius Hart Piano House Ltd., and that the damages were caused by

230

the gross carelessness of both defendants in caring for and handling thereof. Petitioner prayed for judgment for $400.00, against the Junius Hart Piano Co. and against Gallagher.

Gallagher excepted that the petition disclosed no cause of action, that it set forth separate causes of action against the defendants without any priority between them, and that the allegation of solidary liability of the defendants was only a conclusion and not a matter of law. These exceptions were referred to the merits.

The defendant Gallagher then answered denying any indebtedness, denying that it knew anything about the contract of 1913 between the plaintiff and the Piano Company; he admitted that on May 14th, 1914 the Piano Company deposited with him the separate parts and portions of an organ for which he gave the Piano Co. a receipt, and that he had no knowledge that plaintiff had an interest therein until March 25th, 1916 when the Piano Company gave the plaintiff an order on him for the delivery of the organ to the plaintiff; that on April 6th, 1916 he delivered to the plaintiff the several pieces of the organ on the list thereof made at the time of the deposit made with him on May 14, 1914, without a single piece missing; that at the time he received the organ it was not boxed; that the storage was paid to him by the Piano Company from the time he received the organ, May 14, 1914, to March 14, 1916, when he received the order to deliver the organ to the plaintiff. He prayed that the plaintiff's demand against him be dismissed.

The Junius Hart Piano Company denied any indebtedness to plaintiff; it averred that on February 15th, 1913, it was employed by plaintiff to take down and remove to its premises plaintiff's organ, which it did, and for which it charged $45; it admitted that the organ remained in its store as alleged, but it denies that it was under any obligations to sell it; that on May 14, 1914, it informed the plaintiff that it could no longer store the

organ, and asked the plaintiff to remove it, and that unless
this was done,

"your respondent would be compelled to take it down and
remove it to some warehouse and there store it for ac-
count of plaintiff and at its expense";

and that when plaintiff failed to comply with its request it
took down the organ, and after giving plaintiff notice, stored
the organ in Gallagher's warehouse, and on March 27, 1916, gave
plaintiff an order upon Gallagher for the delivery to it of said
organ; it denied that the organ was in good condition when deliv-
ered to it, or that it caused any damage to it; it further averred

"that the said pipe organ was delivered by it to the said
Wm. Gallagher & Co. in good order and condition",

and it prayed for the dismissal of the suit.

Preceded by a written opinion the trial judge rendered
a judgment against the Piano Company and dismissed the suit
against Gallagher. From this judgment both the plaintiff and the
Piano Co. have appealed.

In this Court the Piano House filed a plea of pre-
scription of one and three years.

The conclusion at which we have arrived upon the merits
makes it unnecessary for us to consider the exceptions of mis-
joinder or prescription.

On behalf of Plaintiff, Joseph Jemevine, a drayman,
testified that he received the organ from Gallagher and deliver-
ed it to the Crescent Theatre; the woodwork and pipes were all
broken; he knows nothing about organs.

Abe Seligman testified that he bought the organ from
the Hart Piano Co.; that he kept it on the stage for a long time,
and then asked Mr. Simmons, Manager of defendant Company, to sell
it; Simmons told him he would store it in the third floor of
Hart's place and keep it in good order; the organ was "in first
class order" when it left the theatre; it went from there to
Hart's.

232

Edward Dennecamp testified that he was employed by the Tulane and Crescent Theatres; he received the organ at the Crescent Theatre; he noticed the tubes were all mashed up as if somebody had been walking on them, and some parts of the organ were missing and broken off; after it was unloaded he covered it with a cloth; it was left there

"some little time afterwards when they needed the stage, and it was put in the loft with the rigging";

he received the organ about four years ago, he cannot remember the date; when he received the organ it was not boxed up; it came all in different pieces on the wagon, plenty of pieces.

On behalf of Gallagher, W. H. Watson testified that he examined the organ at Hart's store before it was moved to make an estimate on the storage, it was at that time dismantled or taken down; the organ was afterwards sent to Gallagher's; a warehouse receipt was issued and mailed to the Hart Company, he never saw the organ afterwards.

Sam Longo was warehouseman for Gallagher in 191 when the organ was brought in; he is no longer in his employ; he received the organ; it was delivered in a Junius Hart wagon, and taken into the warehouse by the Junius Hart men; he showed them where to place the parts of the organ; it took two loads on separate days, May 13th. and 14th, 1914; he made the check lists, one for each load; he checked each piece as it came in; some parts were broken, some bent and others scratched; the organ remainded in the same place in the warehouse where it had been put until May 16th, 1916 when it was delivered to the Theatre Company; he was in charge of the warehouse from 1914 to 1916; when the stuff was first brought there, it looked as if it was going to pieces; he made out triplicate receipts, one for the driver of the wagon, one for the office, and a third for the warehouse record; all alike; he handed one of those receipts to the driver of Hart's wagon; George Jenni-

233

vin's wagon moved the organ for the Lafayette people; at the time the organ was delivered to Gallagher the lead pipes were bent, that was the only injury to the body of the organ; he does not know how many were injured nor how many there were in the organ; about six were injured; some of the veneer on the organ was chipped off; the Hart men handled the stuff carefully; he did not see any bellows on the organ; none of the stuff was injured in the Gallagher warehouse.

W. H. Watson identifies the warehouse receipt, a copy of which he ordered mailed to the Hart Company; when the Lafayette Theatre Co. called for the organ, he refused to deliver it without the production of the receipt he had issued; the Junius Hart people claimed they misplaced it, so they delivered it on a letter from them; Gallagher did not know that the Lafayette Theatre Co. had any interest in that organ, until they called for it, and Junius Hart instructed him to deliver it to them.

London Hall testified that the Junius Hart men who hauled the organ to Gallagher's delivered it into the warehouse; it was put in a corner of the warehouse where noting could disturb it, no one touched it until it was delivered to the theatre; at the time it was delivered at Gallagher's there were several pipes bent and others flat; one small wooden one was broken; the organ was covered with paper;

On behalf of the Junius Hart Piano House, George A. Stocker testified: He is General Manager of the Piano House; the organ was removed from his store to Gallagher's in May 1914 in good condition; while in his store the organ was set up in a condition to play; they had it taken down and moved to Gallagher's; he gave the Lafayette Theatre notice that he intended to move it; his own wagon delivered it; it was not boxed; the different parts were put upon the wagon and delivered to Gallagher in that way; the driver of the wagon was George Wycoff who

234

is still driving a truck for them; it was all delivered in one day; the book-keeper may have received a receipt from Gallagher's; he does not know.

Wm. Worth testified that he was in the Piano and Organ line; that the organ was in the Hart Store all set up and intact ready to be shown to a prospective buyer; he was employed by Hart in May 1914; he took the organ down; it was in good condition, no defects; all the pieces were put on a Hart wagon and sent to a warehouse; he superintended the loading himself, the organ was not boxed; they do not box those instruments; he did not actually see every part loaded into the wagon; he was not on the sidewalk, he was in the building on the second floor; he was told as they left the place; he is no longer employed by Hart; he has a place of his own; he believed the organ was sent to Hart's to be sold there; Hart wanted the room and had witness to take it down and send it to Gallagher's the same day.

Wm. Worth, recalled, said that all the pipes of an organ have to be bent, even in their proper position; the factory makes them that way.

George A. Stocker, recalled, says he never saw the receipt the Gallagher witnesses say they sent him; so far as he knows such a document was not received.

It is not enough for a plaintiff to make his case probable; he must make it reasonably certain. We think the plaintiff has failed to establish this essentail requirement both as to the proof of damage by the defendants, and as to the amount of the damages.

William Worth is engaged in the Piano and Organ business; had been with the Junius Hart people for thirteen years, and, at the time he testified, had a place of his own where he did general repair work. He testifies that at the time he took it down and apart to send it to Gallagher, in May 1914, it was in "good condition, no defects". This testimony is uncontradicted and must

235

be taken as true, coming as it does from a witness who is disinterested and competent to testify from his practical knowledge of organs. His testimony besides is corroborated by that of George A. Stocker, general manager of the Piano House.

There is no testimony to show that any parts of the organ were damaged at Gallagher's, nor is there any contention on the part of the plaintiff that they were injured while there. Plaintiff is therefore driven to the argument that the different parts of the organ were injured in their transit from the Hart House to Gallagher's in March 1914. This is too improbable to believe without some proof of the fact, and there is none to that effect. The Piano House was on Canal Street, and the Gallagher warehouse was on Jackson Stfeet, a distance of less than two miles. The organ was taken down by the Piano House employees, under the superintendence of William Worth, they were carried directly to the Piano House wagon driven by an employee of the Piano House; the several parts were taken out of the wagon by Piano House employees, and by them placed in the space allotted to them in the Gallagher warehouse. All these employees were experienced in their business, and, as testified by Sam Longo, warehouseman for Gallagher, "they handled it carefully". The evidence to prove that the parts of the organ were damaged when they reached Gallagher's is far from conclusive. The substance of the testimony of warehouseman and of his assistant is that some pipes were bent. To quote his own language:

Q. "In other words, you noticed some parts of the veneer was chipped off, and six pieces of lead pipe were bent out a little more than the right angle elbow?

A. Yes.

Q. And that is what you made that report on?

A. Yes; that's all I remember".

What is that report?

On one we read:

236

"7 pcs. Pipe - Two pces all bent". "Organ bench - all scratched and rubbed". "The lead pipes are more or less bent". "All in bad condition".

On the other receipt we read:

"32 pcs. pipe - All these pipes are rubbed or scratched".

"1 lot lead pipe - one pce wood broken and one pipe broken". All this organ look to be in bad condition".

There is no evidence that the organ bench and pipes were not "rubbed" or scratched when they were sent by the plaintiff to the defendant in 1913. There is no evidence that this damage was done by the Piano House. The gist of all the testimony is to the effect that the pipes were "bent". The testimony of William Worth is as follows:

"Well, those pipes, they all have to be bent, even in their proper position when they come out of the key board section, they are bent and come up to meet the proper connection. They are always bent, the factory makes them that way".

We are bound to believe Worth in his particular branch of business, in which he speaks as an expert, rather than the testimony of two warehousemen who are not shown to know anything about organs and who speak merely from appearances. Every one must be believed in his own particular art.

The testimony of Henry Hecaud is no basis upon which to establish either a case of damage or of the amount thereof. He examined the different parts of the organ on June 1916, three months after plaintiff received them. He says:

"I found the organ to have some parts missing, the lead tubing damaged, and the bellows seemdd to be damaged also".

At that time the organ had been in the possession of the plaintiff since March 1916; in the language of Edward Dennecamp

"it was put in the loft with the rigging".

237

There is no proof that at the time the several parts of the organ were sent by the Hart Piano House to Gallagher, and by Gallagher to the plaintiff, any parts were missing, except the testimony of this witness who is not shown to know anything about organs and who did not put it up. The damages that Hecaud points out might have occurred while the parts were in plaintiff's loft. There is no evidence that the damage occurred elsewhere. There is no evidence that the damage to the bellows was other than the natural wear and tear of an article stored in a warehouse and in a loft for a period of over two years As to the lead pipes Worth testifies:

> "I never found them injured so they could not be put up again".

While Hecaud made his report in June 1916 it was not until March 1917 that plaintiff filed this suit.

It is therefore ordered that the judgment of the District Court in so far as it is in favor of William Gallagher be affirmed; that the judgment of the District Court in favor of the plaintiff and against the Junius Hart Piano House Ltd. be reversed and annulled, and that plaintiff's demand be rejected at its cost in both Courts.

January 2nd, 1922.

Wynne G. Rogers,
 Judge of Div."E." of the Civil District Court,
 Parish of Orleans, acting, by order of the Court
 of Appeal, in the place of Judge Max Dinkelspiel,
 recused.

 -----:------

Lafayette Theatre Company,

 Vs.

Junius Hart Piano House, Ltd.
& al., Appellant.

 The judgment of the Court a qua was in favor of plaintiff against defendant, Junius Hart Piano House Ltd., as prayed for, and in favor of defendant, William Gallagher, dismissing plaintiffs suit as to him.

 This Court, on appeal, reversed and annulled the judgment against the Hart Piano House and affirmed the judgment in favor of William Gallagher. A re-examination of this case satisfies us of the correctness of our former opinion and decree.

 The evidence fails to establish any damage whatever to the organ during the time it was on deposit with Gallagher. This defendant is, therefore, clearly without fault. Nor is the evidence any more convincing to fasten liability on the Hart Piano House.

 While in the custody of the Hart Piano House, in its store and during its removal to the Gallagher Warehouse, the organ was carefully handled by men experienced in the business.

 The evidence relied on by plaintiff to show damage to the instrument during the transportation of thereof from the store of the Hart Piano House to the Gallagher Warehouse is in the nature of general statements, the burden of which merely establishes the general bad condition of the organ. This is a condition which would be expected to be found in a second-hand instrument, which this organ was.

 The testimony of Hecaud, the expert called on behalf of plaintiff, was based on an examination made some three months after plaintiff had resumed control of the organ. It is worthless as throw-

 ing any light on the issues involved herein. The organ had been removed by plaintiff, its employees not being shown to have been experienced in that line of business, from the Gallagher Warehouse to the Crescent Theatre, where it was first deposited on the stage;and,thereafter, being found to be in the way, was placed "in the loft with the rigging"; where, presumably, as it is not shown otherwise, the examination of Mr. Heaand was made.

There is no more reason to hold that the damage found by Mr· Hecand occurred during the time of the removal of the organ from the Hart Piano House,by experienced men, to the Gallagher Warehouse, than that it occurred while the instrument was undergoing its several removals by plaintiff's inexperienced employees from the Warehouse to the stage of the Crescent Theatre and then to the "loft with the rigging." If we were dealing in probabilities, the latter one would commend itself to our reason and judgment.

But however that may be, plaintiff has not established,with that degree of certainty required by law, either that the damage to the organ was due to the negligence of the Hart Piano House or its employees, or the amount of the alleged damage.

For the reasons assigned, our former opinion and decree is re-instated and made the final judgment of this Court.